# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# WHEELING

**RANDALL K. PERKINS**,

       Petitioner,

v.

**JENNIFER SAAD,** Warden

       Respondent.

Civil No.: 5:16CV182
(JUDGE STAMP)

## REPORT AND RECOMMENDATION

This matter is assigned to the Honorable Frederick P. Stamp, United States District Judge, and it is referred to the undersigned for submission of a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2.  For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** this civil action.

### I.   Procedural History

On December 9, 2016, the Petitioner filed a Writ of Habeas Corpus Under 28 U.S.C. § 2241. ECF No. 1. On December 30, 2016, the Petitioner paid the five dollar filing fee. ECF No. 8. On February 22, 2016, the undersigned ordered the Respondent to show cause as to why the writ should not be granted. ECF No. 9.

On March 21, 2017, the Respondent filed a Motion to Dismiss or, in the Alternative, for Summary Judgement together with a  memorandum  in  support.  ECF Nos. 14-15.  A Roseboro Notice was issued to the Petitioner by the undersigned on April 10, 2017, pursuant to Roseboro v. Garrison, 528 F. 2d 309, 310 (4th Cir. 1975),

1

instructing Petitioner of his right to file a response to Respondent's Motion and Memorandum. ECF No. 16. On April 19, 2017, the Petitioner was granted an enlargement of time to Reply to the Respondent's Motion with a new deadline of May 19, 2017. To date, the Petitioner has failed to file a Reply.

## II.     Facts

In approximately May of 2008, the Petitioner was incarcerated at the Whitley County Detention Center in Kentucky. ECF No. 15-1, ¶ 7. He had been arrested and jailed after an individual cooperating with state law enforcement authorities purchased methamphetamine from him. Id., ¶ 6.  While he was in Kentucky state custody, he offered to pay a fellow prisoner to murder the cooperating witness who had purchased the methamphetamine from him. Id., ¶ 7. The fellow prisoner alerted federal law enforcement authorities to the murder for hire request. Id.

Federal authorities borrowed the Petitioner from Kentucky state custody pursuant to a federal writ of habeas corpus ad prosequendum ("WHCAP") from July 28, 2008, through July 17, 2009, so that he could appear in federal court to address the Federal murder for hire charges. ECF No. 15-1, ¶¶ 8-11.  On July 16, 2009, the United States District Court for the Eastern District of Kentucky sentenced the Petitioner to 92 months in prison after he pleaded guilty to one count of "Conspiracy to Use Interstate Commerce Facilities to Commit a Murder for Hire." ECF No. 15-2 at 31-32.   The sentencing court did not specifically address whether the Petitioner's federal sentence would run concurrently or consecutively with his Kentucky state sentence.

On March 1, 2012, the Petitioner was released from state custody on parole and delivered into federal custody to serve his federal sentence. ECF Nos. 15-1 at 28, 38.

The Bureau of Prisons ("BOP") computed the Petitioner's 92 month federal sentence to begin on March 1, 2012. ECF No. 15-1 at 8. The BOP did not give the Petitioner credit for the time he was subject to the federal writ. Id. at 9.

The Petitioner began the administrative grievance process on May 31, 2016. ECF No. 1-1 at 2. During the administrative grievance process, the BOP interpreted the Petitioner's request for additional credit as a request for a *nunc pro tunc* designation as a result of the ruling under Barden v. Keohane, 18, 921 Fed.2d 476 (3rd Cir. 1990). More specifically, the BOP conducted a retroactive designation review to determine whether his federal sentence should be deemed to have started concurrently with his underlying state sentence. On December 12, 2016, the BOP denied this request.

The Petitioner remains incarcerated at FCI Gilmer. His current projected release date from federal custody is November 28, 2018, via good conduct time.

## The Pleadings

### A. The Petition

The Petitioner alleges that the BOP has unlawfully computed his sentence and caused him to be incarcerated for longer than the sentence that was imposed. More specifically, the Petitioner alleges that the BOP failed to award him credit for the time he was in federal custody from about July of 2008 to July of 2009. The Petitioner further alleges that he was a pre-trial state detainee during that period and did not receive state credit for that period. For relief, the Petitioner is requesting jail credit, plus "gain time credit" for the period from July 7, 2008 until July 2009. He also requests that a new computation sheet be prepared with added time credited and reflecting a new release date.

**B. Respondent's Motion and Memorandum**

In response to Petitioner's claims, the Respondent argues that the BOP has the exclusive authority to compute a federal prison sentence, and this habeas petition lacks merit because the BOP properly calculated his federal sentence. More specifically, the Respondent argues that the Petitioner's federal sentence did not begin when federal authorities borrowed him from state custody pursuant to a federal writ. In addition, the Respondent argues that the petitioner received credit against his Kentucky state sentence for the entire duration of his federal writ, and the BOP properly declined to award him duplicative credit for this time to reduce his federal sentence. Finally, the Respondent argues *nunc pro tunc* designations are within the exclusive discretion of the BOP.

### III.   Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair

notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable," Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.


**B. Motion for Summary Judgment**

The Supreme Court has recognized the appropriateness of summary judgment motions pursuant to Rule 56 of the Federal Rules of Civil Procedure in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977); see also Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991).

Motions for summary judgment impose a difficult standard on the moving party because it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. FDIC, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson, 477 U.S. at 248-49.

## IV.   Analysis

Following a federal conviction and sentencing, the United States Attorney General, acting through the BOP, is responsible for calculating an inmate's term of confinement, including a determination of when the sentence commences. United

States v. Wilson, 503 U.S. 329, 334 (1992). In making this computation, the BOP must adhere to 18 U.S.C. § 3585 (b), which provides as follows:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences: (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

Id.

Under section 3585 (a), "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody while waiting transportation to, or arrives voluntarily to commence service of a sentence at, the official detention facility at which the sentence is to be served." As a general rule, when an inmate is facing sentences imposed by both federal and state authorities, the sovereign that first arrested the inmate retains primary custody over him until that sovereign's imposed sentence is satisfied. United States v. Evans, 159 F.3d 908, 912 (4th Cir. 1998). When an inmate is borrowed pursuant to a writ of *habeas corpus ad prosequendum*, the original sovereign has "merely loan[ed] that prisoner to federal authorities" and does not forfeit its primary jurisdiction. Id. "Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation." Id.

Here, the State of Kentucky did not lose its primary jurisdiction over the Petitioner when it lent him to federal authorities pursuant to the writ of *habeas corpus ad prosequendum*. Kentucky maintained primary jurisdiction over the Petitioner until March

7

1, 2012, when he was released on parole and taken into federal custody for service of his federal sentence. Moreover, the Petitioner was granted jail credit against his state sentence for the 519 days from his arrest on March 28, 2008, through his sentencing in state court on August 28, 2009. ECF No. 15-1 at 11. Therefore, he cannot receive credit for the time between July 2008 and July 2009, against his federal sentence, absent a *nunc pro tunc* designation.

18 U.S.C. § 3621(b) grants the BOP discretion to select the place of a federal prisoner's confinement, stating that the agency may "designate any available penal or correctional facility that meets minimum standards of health and habitability . . . , [regardless of] whether [the facility is] maintained by the Federal Government or otherwise . . . , that [BOP] determines to be appropriate and suitable." 18 U.S.C. § 3621(b). "The phrase 'or otherwise' refers to the BOP's authority to designate federal prisoners to state prisons." Jefferson v. Berkebile, 688 F.Supp.2d 474, 486 (S.D.W. Va. 2010( (citing Evans, 159 F.3d at 911-12). The statute specifically directs the BOP to consider five factors in making this determination:

1. the resources of the facility contemplated;
2. the nature and circumstances of the offense
3. the history and characteristics of the prisoner;
4. any statement by the court that imposed the sentence –
    (A) concerning the purpose for which the sentence to imprisonment was determined to be warranted; or
    (B) recommending a type of penal or correctional facility as appropriate; and
5. any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).

Under this statute, the BOP has the power to order a *nunc pro tunc* designation of a state facility as the place of imprisonment for a federal prisoner, essentially allowing

for a retroactive concurrency through which the federal prisoner can receive credit against his federal sentence for time already served in the state facility. Jefferson, 688 F.Supp.2d at 487 (citing Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 245-46 (3d Cir. 2005)).

The BOP's policy on designating a non-federal institution for the service of a federal sentence is set forth in BOP Program Statement 5160.05. "Normally, designating a non-federal institution for the inmate is done when it is consistent with the federal sentencing court's intent." Id. at 4. The sentencing court's intent can be established at the time the sentence is imposed, by way of an order or recommendation, as recorded in a document such as a judgment and order of commitment.[1] Failing that, an inmate can request a *nunc pro tunc* designation, as the Petitioner was construed as having done through the administrative grievance process.

As part of determining whether to designate a state institution for service of a federal sentence, it is BOP policy to send a letter to the prisoner's sentencing court, with copies to the U.S. Attorney's Office and U.S. Probation Office in which the BOP inquires as to the sentencing court's position on applying a retroactive designation. See BOP Program Statement 5160.05 at 6. In keeping with this policy, on August 9, 2016, the sentencing court was contacted, by letter, to obtain an opinion regarding the granting of a retroactive designation. No response was received from the court. ECF No. 15-1 at 45.

---

[1] Where, as here, a federal sentencing judge does not indicate whether a defendant is to serve his federal sentence consecutively or concurrently with a previously imposed state sentence, the default position is that the federal sentence shall be served consecutively because the federal sentence is one of secondary jurisdiction. See 18 U.S.C. § 3584(a).

9

On December 12, 2016, the BOP denied the Petitioner's request for a nunc pro tunc designation. The worksheet that the BOP used to conduct the review was entitled "Factors Under 18 U.S.C. § 3621(b) Worksheet" and subdivided into five sections. The examination of these factors was as follows:

> **Factor (1)-the resources of the facility contemplated:** The inmate is in the primary custody of the Bureau of Prisons and designated to FCI Gilmer (Security Level-Medium);
>
> **Factor (2)-the nature and circumstances of the offense:** Federal Offense-18 U.S.C. § 1958; Conspiracy to Use Interstate Commerce Facilities to Commit a Murder for Hire. Term-92 months. State Offense-Parole Revocation; Original Offense-Burglary, Robbery, and Manufacturing Meth-amphrtamine.Term-20 Years. Trafficking in a Controlled Substance. Term-10 years (consecutive). Federal and State charges are related in the PSR instant offense conduct due to state parole revocation hearing resulting at least in part because of the federal conviction.
>
> **Factor (3)-the history and characteristics of the prisoner (to include institutional adjustment and prior criminal history):** Excluding the aforementioned state and federal convictions, the following convictions are listed within the Pre-Sentence Investigation Report: Illegal Storage of Explosive Material, Cultivating Marijuana, Receiving Stolen Goods, Burglary, Operating on a Suspended/Revoked Operators License (5x), Traffic Offenses, Public intoxication – Controlled Substance (3x), Aggravated Assault-Spouse, Disorderly Conduct, Resisting Arrest, Alcohol Intoxication, Theft, Robbery, and Manufacturing Methamphetamine. The BOP Disciplinary Record has been reviewed with the following conduct listed: The Abuse-Disrupt Monitoring. No State Disciplinary information has been received.
>
> **Factor (4) any statement by the court that imposed the sentence:** The sentencing court was contacted to obtain an opinion regarding the granting of a retroactive designation on August 9, 2016. Ordinarily, the Bureau gives the Court 60 days to respond to the request. No response has been received from the Court at this time. There is no indication

>the Court has responded to the Bureau's Request in PACER.
>
>**Factor (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 924(a)(2) of Title 28."** N/A

ECF No. 15-1 at 45.

While the Petitioner may disagree with the BOP's evaluation on that Worksheet, the BOP's *nun pro tunc* determination is reviewed for abuse of discretion, and its findings are afforded substantial deference and entitled to a presumption of regularity. See Trowell, 135 F. App'x at 593 (citing Barden v. Keohane[2], 921 F.2d 476, 478 (3d Cir. 1991)); Jefferson, 688 F. Supp.2d at 496.   It appears that the BOP considered the five factors required, and the undersigned finds that the BOP did not abuse its discretion.

### V.     Recommendation

For the foregoing reasons, the undersigned **RECOMMENDS** that Respondent's "Motion to Dismiss or for Summary Judgment" **[ECF No. 14]** be **GRANTED**, and that Petitioner's Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 **[ECF No. 1]** be **DENIED** and **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections

---

[2]In Barden, the petitioner brought a § 2241 habeas petition to gain credit for time served in a state prison by having that state facility designated a federal facility *nunc pro tunc*. In pursuing his administrative remedies, the BOP declined to recognize that it had the statutory authority to make such a designation. The Barden court held that the petitioner was "entitled to have his request considered by the agency with the statutory power to grant it and that 28 U.S.C. § 2241 is available to compel that consideration." 921 F.2d at 484. After Barden, the BOP began to analyze requests for retroactive designation pursuant to 18 U.S.C. § 3621(b).  In addition, BOP Policy Statement 5160.05 specifically references Barden with respect to inmate requests for *nunc pro tunc* designation.

identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.  A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, United States District Judge.  Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.  28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

      The Clerk of the Court is **DIRECTED** to provide a copy of this Report and Recommendation to counsel of record and to mail a copy to the *pro se* Petitioner by certified mail, return receipt requested. In addition, this Report and Recommendation completes the referral from the District Court. The Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

      DATED: September 21, 2017

*/s Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE